**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ABBVIE INC. and WISCONSIN ALUMNI RESEARCH FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> HIKMA PHARMACEUTICAL CO., LTD., WEST-WARD PHARMACEUTICALS CORP. and EXELA PHARMA SCIENCES LLC, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 13-1557-GMS |

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

---

*Of Counsel*:

Jeffrey S. Ward
Wendy M. Ward
MERCHANT & GOULD P.C.
10 East Doty Street, Suite 600
Madison, WI 53703
(608) 280-6750
jward@merchantgould.com
wward@merchantgould.com

Collins J. Seitz, Jr. (Bar No. 2237)
Benjamin J. Schladweiler (Bar No. 4601)
SEITZ ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
cseitz@seitzross.com
bschladweiler@seitzcross.com

*Counsel for Defendants Hikma*
*Pharmaceutical Co., Ltd., West-Ward*
*Pharmaceuticals Corp., and Exela*
*Pharma Sciences LLC*

Dated: October 25, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      INTRODUCTION .......................................................................................................... 1

II.     SUMMARY OF ARGUMENT ....................................................................................... 3

III.    APPLICABLE LAW ...................................................................................................... 3

        A.    Legal Standard Governing this Rule 12(b)(6) Motion ................................... 3

        B.    The *Warner-Lambert*, *Allergan* and *Bayer Schering* Decisions ................... 4

IV.     BACKGROUND ............................................................................................................ 7

        A.    The '815 Patent Claims are Directed to an Unapproved use of Paricalcitol ............. 7

        B.    During Prosecution Before the Patent Office, the Applicants
              Distinguished a Reference Teaching the Use of 19-Nor Analogs for the
              Approved Use ................................................................................................ 8

        C.    ZEMPLAR® is approved for the treatment of secondary
              hyperparathyroidism and is not approved for the treatment of renal
              osteodystrophy. ........................................................................................... 10

        D.    Hikma's 505(b)(2) application seeks approval for the approved use. ................... 10

        E.    AbbVie Purports to State Claims of Statutory Infringement,
              Inducement and Contributory Infringement ................................................ 11

V.      ARGUMENT ............................................................................................................... 12

        A.    AbbVie Cannot State A Claim Of Infringement Under 35 U.S.C.
              § 271(e)(2) .................................................................................................. 13

        B.    AbbVie Cannot State A Claim For Induced Infringement Under 35 U.S.C.
              § 271(b) ...................................................................................................... 14

        C.    AbbVie Cannot State A Claim For Contributory Infringement Under
              35 U.S.C. § 271(c) ...................................................................................... 17

VI.     CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*Allergan, Inc. v. Alcon Laboratories, Inc.,*
    324 F.3d 1322 (Fed. Cir. 2003)............................................................1, 5, 6, 14, 16

*AstraZeneca Pharms. LP v. Apotex Corp.,*
    669 F.3d 1370 (Fed. Cir. 2012)........................................3, 10, 13, 14, 15

*Bayer Schering Pharma AG v. Lupin, Ltd.,*
    676 F.3d 1316 (Fed. Cir. 2012)................................................... *passim*

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997)........................................................3

*DSU Medical Corp. v. JMS Co., Ltd.,*
    471 F.3d 1293 (Fed. Cir. 2006)..........................................14, 15, 17, 18

*Global-Tech Appliances, Inc. v. SEB S.A.,*
    131 S. Ct. 2060 (2011)............................................................15

*Lum v. Bank of Am.,*
    361 F.3d 217 (3d Cir. 2004)........................................................4

*MGM Studios Inc. v. Grokster, Ltd.,*
    545 U.S. 913 (2005)..............................................................18

*Sony Corp. of America v. Universal City Studios,*
    464 U.S. 417 (1984)..............................................................18

*Vita-Mix Corporation v. Basic Holding, Inc.,*
    581 F.3d 1317 (Fed. Cir. 2009).....................................................17

*Warner-Lambert Co. v. Apotex Corp.,*
    316 F.3d 1348 (Fed. Cir. 2003)................................................. *passim*

## Rules & Statutes

Fed. R. Civ. P. 12(b)(6)............................................................. *passim*

21 U.S.C. § 355(b)(2) ..................................................................2

35 U.S.C. § 103 .........................................................................9

35 U.S.C. § 271(b) ............................................................... *passim*

35 U.S.C. § 271(c) ............................................................... *passim*

35 U.S.C. § 271(e)(2) ........................................................... *passim*

35 U.S.C. § 271(e)(2)(A) ....................................................... *passim*

## I.    INTRODUCTION

Defendants Hikma Pharmaceutical Co., Ltd., West-Ward Pharmaceuticals Corp., and Exela Pharma Sciences (collectively, "Hikma") submit this brief in support of their Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6). This case was improperly brought pursuant to the Hatch-Waxman Act because Plaintiff AbbVie Inc. ("AbbVie") wrongfully listed the patent in issue, U.S. Patent No. 5,597,815 ("the '815 patent"), in the Orange Book with respect to its Zemplar® (paricalcitol) injection product. The '815 patent is a method of use patent that does not cover the only approved use for Zemplar®. Instead, it covers an unapproved use, a use for which AbbVie actually sought approval but was refused by the FDA.  Because the '815  patent is listed in the Orange Book, however, Hikma was forced to make a paragraph IV certification against it, which entitles AbbVie to a thirty month stay of regulatory approval of Hikma's application for a generic paricalcitol injection product unless Hikma prevails sooner in this case.[1]  AbbVie's actions should not be rewarded by allowing this case to proceed and improperly keeping the thirty month stay in place.

For over a decade, it has been the law of the Federal Circuit that a patent holder such as AbbVie may not bring an action under 35 U.S.C. § 271(e)(2)(A) for infringement of a method-of-use patent that does not claim a use approved by the FDA under the patent holder's NDA. Because the '815 patent claims an unapproved use for Zemplar®, the infringement allegations made by Plaintiffs AbbVie and Wisconsin Alumni Research Foundation (collectively, "AbbVie") against Hikma are foreclosed as a matter of law by the Federal Circuit's decisions in *Bayer Schering Pharma AG v. Lupin, Ltd.*, 676 F.3d 1316 (Fed. Cir. 2012), *Allergan, Inc. v.*

---

[1] Because the '815 patent (including its corresponding period of pediatric exclusivity) expires on January 13, 2016, the thirty month stay would extend beyond the expiration date of the '815 patent. (D.I. 3.)

*Alcon Laboratories, Inc.*, 324 F.3d 1322 (Fed. Cir. 2003), and *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed. Cir. 2003) and should be dismissed.

Contrary to this well-established law, AbbVie asserted claims of infringement against Hikma based on a patent claiming an unapproved use for Zemplar®.  Specifically, AbbVie alleges that Hikma infringed and will infringe the '815 patent by filing a New Drug Application (NDA) under § 505(b)(2) of the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. § 355(b)(2) (also known as a "505(b)(2) application"), requesting permission from the FDA to sell a generic paricalcitol injection product for the treatment of secondary hyperparathyroidism. But the '815 patent, a method-of-use patent, can only be infringed if the accused generic product is used for treatment of *renal osteodystrophy*.  Zemplar® itself is not approved by the FDA to treat renal osteodystrophy; in fact, as stated above, the FDA rejected this indication when AbbVie proposed it during the pendency of the Zemplar® NDA.  Zemplar® is approved only for the treatment of *secondary hyperparathyroidism*, and the patent directed to that indication, U.S. Patent 5,246,925, is expired.  Since Hikma has not applied to manufacture and market its generic drug for the patented unapproved use, AbbVie does not have a cause of action under § 271(e)(2)(A).

AbbVie has also alleged that Hikma infringes the '815 patent indirectly, either by contributing to or inducing the infringement of others.  However, AbbVie's claims of indirect infringement stand on no firmer legal ground that its claim of infringement under section 271(e)(2)(A). The Federal Circuit has previously addressed the issue of induced infringement in a number of cases and found that, absent evidence of specific intent by the alleged infringer that a direct infringer use a drug as part of an off-label, patented method, actions for inducement are untenable.  Moreover, because Defendants' proposed generic paricalcitol product has a

substantial non-infringing, FDA-approved, and unpatented use, AbbVie's allegations of contributory infringement are legally baseless and should be dismissed.

## II.     SUMMARY OF ARGUMENT

1.  Because the '815 patent covers an unapproved method of use for Zemplar® for which Hikma is not seeking approval, AbbVie cannot state a claim for infringement under § 271(e)(2)(A) or § 271(b).

2.  Additionally, AbbVie cannot state a claim for infringement of the '815 patent under § 271(b) based on statements in the Clinical Pharmacology section of Hikma's proposed label, because pursuant to relevant legal precedent, those statements do not constitute an approved use upon which a claim of induced infringement may be based.

3.  AbbVie cannot state a claim for infringement of the '815 patent under § 271(c), because pursuant to relevant legal precedent, the use of Hikma's proposed generic paricalcitol product for its approved use is a substantial non-infringing use as a matter of law.

## III.    APPLICABLE LAW

### A.     Legal Standard Governing this Rule 12(b)(6) Motion

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed if it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding such a motion, the court should "accept[] as true all non-conclusory allegations of fact." *AstraZeneca Pharms. LP v. Apotex Corp.*, 669 F.3d 1370, 1376 (Fed. Cir. 2012).

In deciding a motion to dismiss under Rule 12(b)(6), a court is entitled "to examine documents 'integral or explicitly relied upon in the complaint,'" including the plaintiff's NDA and patents, and the defendant's application for regulatory approval and the associated labeling, as well as matters of public record.  *AstraZeneca*, 669 F.3d at 1378 n.5 (citing *In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Lum v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider . . . matters of public record . . . .").

In Hatch-Waxman cases, the substantive determination of infringement (both direct and indirect) is determined by traditional patent infringement analysis, the only difference being that the inquiry is hypothetical because the accused product is not yet marketed. *Warner-Lambert*, 316 F.3d 1348, 1365 n.3 (Fed. Cir. 2003). Here, Hikma's 505(b)(2) application must be judged on its face for what Hikma seeks the FDA's approval to do. *Id.* at 1364.

## B. The *Warner-Lambert*, *Allergan* and *Bayer Schering* Decisions

AbbVie's infringement claims are foreclosed as a matter of law at least by the Federal Circuit's decisions in *Warner-Lambert*, *Allergan* and *Bayer Schering*. Each of these cases presented identical legal questions and highly analogous facts to those present in this case. In each of these cases, the Federal Circuit affirmed the lower courts' dismissals or grants of summary judgment in favor of the generic applicants.

In *Warner-Lambert*, the branded gabapentin drug product was approved by the FDA for use in treating epilepsy. *Warner Lambert*, 316 F.3d at 1352. There were two expired patents that related to gabapentin, one covering the compound itself, and the other covering a method of use of the compound for treating epilepsy. *Id.* at 1351. In addition, Warner-Lambert had a still-in-force method patent covering the use of gabapentin for treating neurogenerative disease, a use not approved by the FDA, which Warner-Lambert had listed in the Orange Book. *Id.* at 1351-52.

After Warner-Lambert's treatment of epilepsy patent expired, Apotex filed an ANDA to market a generic form of gabapentin for the FDA-approved use of treating epilepsy, and made a

paragraph IV certification to the neurogenerative disease patent. *Id.* at 1352. Warner-Lambert sued Apotex under 35 U.S.C. § 271(e)(2)(A), alleging that Apotex's ANDA filing constituted statutory infringement of its still-in-force neurogenerative disease method patent. *Id.* at 1353. Warner-Lambert also claimed that sale of Apotex's proposed generic gabapentin product would induce the infringement of that patent in violation of § 271(b), because gabapentin was widely prescribed by physicians for unapproved (i.e., "off-label") uses, including the infringing use of treating neurogenerative diseases.[2] *Id.* at 1354.

The district court granted Apotex's motion for summary judgment of non-infringement. *Id.* at 1353. The Federal Circuit affirmed, holding that judgment of non-infringement was required—as it is in this case—"as a matter of law." *Id.* at 1351. The court held that there is no "cause of action under § 271(e)(2)(A) [because] Congress clearly intended to limit actions for infringement of method-of-use patents under §271(e)(2)(A) to 'controlling use patents,' or patents that claim an approved use of a drug." *Id.* at 1362. The Court also rejected Warner-Lambert's claim of inducement under 35 U.S.C. § 271(b), holding that an ANDA filer's knowledge that physicians would prescribe a proposed generic drug for "off-label" uses was "legally irrelevant." *Id.* at 1364.

*Allergan*, decided by the Federal Circuit shortly after *Warner-Lambert*, also forecloses any possible argument that Hikma infringes the '815 patent simply because use of its proposed generic paricalcitol product might also result in achieving the use claimed in the '815 patent. In *Allergan*, the Federal Circuit considered Alcon's ANDA to market the unpatented drug brimonidine for the FDA-approved and unpatented use of reducing intraocular pressure.

---

[2] While drug companies are strictly forbidden to promote their products for unapproved uses, a physician "may prescribe an approved drug for any use consistent with acceptable medical practices." *Warner Lambert*, 316 F.3d at 1356.

*Allergan*, 324 F.3d at 1324. It was undisputed that brimonidine was also effective for unapproved uses, including protection of the optic nerve and neural protection, which were claimed in the two patents asserted by Allergan. *Id.* The court addressed the question of whether the Hatch-Waxman Act allows an action for infringement where, as in this case, "the ANDA applicant seeks approval for the production of a generic version of the drug for a use that is different from the method of use of the drug that is claimed in the patent, and [] the generic drug that is the subject of the ANDA is effective for the method of use that is claimed in the patent." *Id.* The Federal Circuit held as a matter of law that there could be no infringement, given the limited scope of the ANDA. Critically, the court explained that "the FDA has not approved brimonidine for the uses claimed in the [asserted] patents," and the generic applicant did not seek "FDA approval for the methods of using brimonidine claimed in [those] patents." *Id.* at 1324, 1328. It was immaterial that "brimonidine is effective for those uses." *Id.* at 1328.

*Bayer Schering*, decided by the Federal Circuit just last year, is the final nail in the coffin for AbbVie's claims. In that case, Bayer had obtained approval to market Yasmin® for oral contraception. *Bayer Schering*, 676 F.3d at 1319. The generic defendants also sought approval to market their generic equivalent products for oral contraception. *Id.* The claims of the asserted patents, in contrast, were directed to simultaneously achieving a contraceptive effect, an anti-androgenic effect and an anti-aldosterone effect in a female patient in need thereof. *Id.* at 1320. Bayer argued that because those effects were recognized in the "Pharmacology" and "Clinical Pharmacology" sections of the label for Yasmin®, those effects were "approved uses." *Id.* at 1322. The Federal Circuit disagreed, first reiterating its now well-established rule that "[f]or method-of-use patents, the 'artificial' infringement claim provided by section 271(e)(2)(A) lies only against a patented use that has been approved by the FDA." *Id.*

at 1319.  The court then held that even if certain effects appear in sections of the label other than the "Indications and Usage" section, those effects do not constitute approved uses.  *Id.* at 1323.  Upon review of applicable FDA regulations, the court found that FDA approval of a method of use requires a showing that the drug is safe and effective for that use.  *Id.* at 1324.  The court concluded:

> Absent that finding of safety and efficacy, and the recognition of such safety and efficacy on the Yasmin label, the Yasmin label cannot instruct (and the ANDA proposed label cannot induce infringement of) the method of use claimed in the '652 patent.

*Id.*

## IV.     BACKGROUND

### A.     The '815 Patent Claims are Directed to an Unapproved use of Paricalcitol

Claim 1 is the only independent claim of the '815 patent.  That claim recites:

1.      A method of treating a patient having ***renal osteodystrophy*** while avoiding hyperphosphatemia comprising administering to said patient a vitamin D compound that has minimal effect on blood serum phosphorus of said patient, said vitamin D compound selected from a 19-nor-vitamin-$D_2$ compound having the formula:



Where $X^1$ and $X^2$ each represent, independently, hydrogen or a hydroxy-protecting group; and where $R^1$ is selected from hydrogen, hydroxy, protected hydroxy, fluoro, trifluoromethyl, and $C_{1-5}$-alkyl, which may be straight chain or branched and, optionally, bear a hydroxy or protected-hydroxy substituent; and

where each of $R^2$, $R^3$, and $R^4$, independently, is selected from hydrogen, fluoro, trifluoromethyl and $C_{1-5}$ alkyl, which may be straight-chain or branched, and optionally, bear a hydroxy or protected-hydroxy substituent; and where $R^1$ and $R^2$, taken together, represent an oxo group, or an alkylidene group, $==CR^2R^3$, or the group $-(CH_2)_p-$, where p is an integer from 2 to 5; and where $R^3$ and $R^4$, taken together, present an oxo group, or a group $-(CH_2)_q-$, where q is an integer from 2 to 5; and where $R^5$ represents hydrogen, hydroxy, protected hydroxy, or $C_{1-5}$ alkyl.

(Declaration of Wendy Ward ("Ward Decl.," Ex. 1 at 10:38-11:9 (emphasis added).[3])  Thus,

because dependent claims by definition include the limitations of the claim from which they

depend, every claim of the '815 patent requires that the product be used in the treatment of renal

osteodystrophy.  That indication has not been approved by the FDA.

### B.    During Prosecution, the Applicants Distinguished a Reference Teaching the Use of 19-Nor Analogs for the Approved Use

The applicants for the '815 patent filed U.S. Patent Application 08/502,288 ("the '288

application") on July 13, 2005.  (D.I. 1-1 at 2.)  At the time of filing, the applicants sought

broad coverage for their alleged invention and its use to treat a wide variety of kidney disorders.

As initially filed, the '288 application included 17 claims.  Claim 1, the only independent claim,

recited:

> [a] method of avoiding hyperphosphatemia while treating a patient having *a kidney disorder* comprising administering to said patient a vitamin D compound that has a minimal effect on the serum phosphorus of said patient.

(Ward Decl., Ex. 2 at 19 (emphasis added).)

The Patent and Trademark Office (PTO) examiner assigned to the '288 application

rejected all the claims under various statutory provisions.  Of particular relevance, claims 1, 4-7,

---

[3] Paricalcitol is one compound in the claimed genus of compounds.  This genus is also referred to as "19-nor-vitamin D analogs," or simply, "19-nor analogs" in the '815 patent.  (Ward Decl., Ex. 1 at Abstract.)  The Complaint also alleges indirect infringement of "at least claim 4" of the '815 patent.  That claim recites: "4. The method of claim 1 where the said vitamin D compound is $1\alpha,25$-dihydroxy-19-nor-vitamin $D_2$." (*Id.* at 11:16-17.)  $1\alpha,25$-dihydroxy-19-nor-vitamin $D_2$ is paracalcitol.

and 14-17 were rejected under 35 U.S.C. § 103 as obvious in view of a combination of references that included U.S. Patent No. 5,246,925 to DeLuca et al. (hereinafter "DeLuca"). (Ward Decl., Ex. 3 at 2-3.) The examiner stated that the rejected claims were obvious because DeLuca "teaches administration of the specific 19-nor-analogs of vitamin D in the treatment of the kidney disorder renal osteodystrophy." (*Id.*)

The applicants responded to the rejections by, among other things, cancelling claim 1 and adding a new independent claim 18, which eventually issued as claim 1 of the '815 patent. (Ward Decl., Ex. 4.) New claim 18 more narrowly claimed the use of 19-nor vitamin D compounds for the treatment of "renal osteodystrophy." (*Id.* at 3-4.) In conjunction with this amendment, the applicants argued that the part of DeLuca referenced by the examiner as showing the use of vitamin D compounds to treat renal osteodystrophy did not suggest the use of 19-nor vitamin D compounds, such as paricalcitol, to do so. The applicants stated that DeLuca instead taught the use of 19-nor vitamin D compounds for the treatment of secondary hyperparathyroidism, and concluded that "[t]here is no specific mention of the use of 19-nor vitamin D compounds for the treatment of renal osteodystrophy." (*Id.* at 5.) Thus, the applicants represented to the examiner that the claims did not cover the use of 19-nor vitamin D compounds (e.g., paricalcitol) for the treatment of secondary hyperparathyroidism.

After considering the applicants' amendments and arguments, the examiner issued a Notice of Allowability of June 17, 1996. (Ward Decl., Ex. 5.) In the Statement of Reasons for Allowance, the examiner indicated that DeLuca did not teach or suggest the clear use of 19-nor vitamin D compounds to treat renal osteodystrophy. (*Id.* at 3.) Thus, the examiner agreed that the claims were distinguishable over the prior art because they did not cover using paricalcitol

to treat secondary hyperparathyroidism.  The '815 patent issued on January 28, 1997.  (Ward

Decl., Ex. 1.)

C.    **ZEMPLAR® is approved for the treatment of secondary hyperparathyroidism and is not approved for the treatment of renal osteodystrophy.**

AbbVie originally sought approval from the FDA for its branded Zemplar® paricalcitol

injectable formulation to treat not only secondary hyperparathyroidism, but also renal

osteodystrophy.  (Ward Decl., Ex. 6 at 1.)  Ultimately, the FDA refused to approve the use of

Zemplar® for the prevention or treatment of renal osteodystrophy, finding that such use was

unsupported by the data AbbVie submitted during the regulatory process.  (*Id.* at 100, 104.)  As

a result, Zemplar® is approved *only* for the unpatented use of treating secondary

hyperparathyroidism. This approved use is reflected in the label for Zemplar®, and critically, in

the label for Hikma's proposed generic product. (Ward Decl. Exs. 7, 8.)

D.    **Hikma's 505(b)(2) application seeks approval for the approved use.**

As stated above, Hikma submitted a 505(b)(2) application to the FDA seeking to market

a generic paricalcitol injection product for the treatment of secondary hyperparathyroidism.

That application contained a paragraph IV certification to the '815 patent.  Hikma notified

AbbVie of Hikma's 505(b)(2) application and its paragraph IV certification concerning the '815

patent by way of a letter dated July 30, 2013.  (Ward Decl., Ex. 9.)  In that letter, Hikma

indicated that it intends to market its paracalcitol injectable formulations in accordance with the

currently approved indication for Zemplar®, i.e., for the prevention and treatment of secondary

hyperparathyroidism associated with chronic kidney disease Stage 5.  (*Id.* at 1-2.)  Citing

*Warner Lambert* and *AstraZeneca Pharmaceuticals LP v. Apotex Corp.*, 669 F.3d 1370, 1377-

80 (Fed. Cir. 2012), Hikma further informed AbbVie that there is no cause of action against

Hikma under § 271(e)(2) or §§ 271(b) and (c) with respect to the '815 patent based on the submission of Hikma's 505(b)(2) application. (*Id.* at 8-9.) Hikma also notified AbbVie that because the '815 patent only covers an indication which the FDA refused to approve, that patent is improperly listed in the Orange Book. (*Id.* at 9.)

> ### E. AbbVie Purports to State Claims of Statutory Infringement, Inducement and Contributory Infringement

Nevertheless, AbbVie filed its Complaint initiating this action on September 13, 2013. (D.I. 1). AbbVie alleges in Count I of the Complaint that, by applying to launch a generic version of Zemplar®, Hikma: has infringed the '815 patent pursuant to 35 U.S.C. § 271(e)(2)(A); will induce infringement of the '815 patent; and will contribute to infringement of the '815 patent. (D.I. 1 at ¶¶ 40, 45, 46.) In Count II, which incorporates Count I by reference, AbbVie asks for a declaratory judgment of infringement (*Id.* at ¶¶ 51-52.) The declaratory judgment count thus rests on the same bases as Count I.[4]

AbbVie purports to state its claim for infringement under 35 U.S.C. § 271(e)(2)(A) by alleging that Defendants "infringed one or more of the claims of the '815 patent by submitting to the FDA an NDA . . . seeking approval for the commercial marketing, before the expiration date of the '815 patent, of its paricalcitol injectable drug products . . . ." (*Id.* at ¶ 45.) AbbVie further attempts to support its claims of induced and contributory infringement by alleging that because "there is no substantial non-infringing use of paricalcitol injection" and that the use of the Defendants' generic Zemplar® formulation will thus "infringe and contribute to and induce direct infringement of one or more claims of the '815 patent by ultimate purchasers." (*Id.* at ¶¶ 40, 45.)

---

[4] Presumably, Count II is not based on § 271(e)(2)(A).

Although Hikma requests FDA approval for its generic Zemplar® formulation solely for the purpose of treating secondary hyperparathyroidism associated with chronic kidney disease Stage 5, AbbVie alleges that Hikma nevertheless infringes the '815 patent because end users will necessarily also treat renal osteodystrophy. Specifically, AbbVie alleges that secondary hyperparathyroidism is characterized by "persistently elevated parathyroid ('PTH') levels in the blood," which AbbVie alleges is effectively suppressed by paricalcitol. (*Id.* at ¶ 31.) AbbVie further alleges that "[n]umerous studies have shown that renal osteodystrophy is associated with high serum levels of intact PTH" and that a physician "following Defendants' proposed labeled indication would intend that the use of paricalcitol injection to treat secondary hyperparathyroidism in patients with late stage renal failure would necessarily also treat bone abnormalities associated with elevated PTH; that is, would thus also treat renal osteodystrophy as described and claimed in the '815 patent." (*Id.* at ¶¶ 34-35.) However, as explained below, AbbVie's infringement claims fail as a matter of law.

## V.      ARGUMENT

AbbVie cannot sustain its claims in either Count I or Count II of the Complaint that Hikma's 505(b)(2) application infringes the '815 patent or that Hikma would infringe the '815 patent by launching a generic version of Zemplar®. AbbVie received FDA approval to market Zemplar® solely for treatment of secondary hyperparathyroidism associated with chronic kidney disease Stage 5, and not for treating renal osteodystrophy, which is the only use claimed by AbbVie's '815 patent. This indisputable fact alone is dispositive of AbbVie's Complaint. Because Zemplar® itself may not be sold to practice the claimed invention of the '815 patent, a generic competitor could not possibly infringe that patent by marketing a generic version of Zemplar® labeled for the same indications and usage as the branded drug.

AbbVie's claims of indirect infringement likewise fail because there is no statement in Hikma's NDA or proposed label to suggest that Hikma intends to market its generic formulation of Zemplar® for the unapproved indication claimed in the '815 patent. As reflected in its proposed label, Hikma seeks approval to market its generic product *only* for the approved use, treatment of secondary hyperparathyroidism. That use is not covered by the '815 patent.

A.     **AbbVie Cannot State A Claim Of Infringement Under 35 U.S.C. § 271(e)(2)**

Section 271(e)(2) of Title 35 of the United States Code defines as an act of infringement the filing of an ANDA for a "drug claimed in a patent or the use of which is claimed in a patent." 35 U.S.C. § 271(e)(2). This provides an "artificial" act of infringement that creates a cause of action permitting courts to promptly resolve infringement and validity issues before an ANDA or 505(b)(2) applicant actually markets a drug. *AstraZeneca*, 669 F.3d at 1377; *Warner-Lambert*, 316 F.3d at 1365. Once jurisdiction is established, however, "the substantive determination whether actual infringement or inducement will take place is determined by traditional patent infringement analysis . . . ." *Warner-Lambert*, 316 F.3d at 1365.

Where a generic applicant requests FDA approval to market its proposed generic product for an FDA-approved use that is not covered by a patent, the filing of the application does not constitute patent infringement, even if there are uses of that generic product that would infringe the patent. *Bayer Schering*, 676 F.3d at 1319 (holding that "[f]or method-of-use patents, the 'artificial' infringement claim provided by *section 271(e)(2)(A)* lies only against a patented use that has been approved by the FDA" and affirming grant of summary judgment against patentee where the defendant's ANDA sought approval for only one of three pharmacological effects required by the asserted patent); *AstraZeneca*, 669 F.3d at 1378 ("[I]t is not necessarily an act of infringement under § 271(e)(2) to submit an ANDA for a drug if just

13

*any* use of that drug is claimed in the patent; rather, infringement of method claims under *§ 271(e)(2)* requires filing an ANDA wherein at least one 'use' listed in the ANDA is claimed in the patent." (emphasis in original)); *Allergan*, 324 F.3d at 1334 (suit for infringement precluded "because [the defendants] are not seeking FDA approval for the uses claimed in the patents and because the uses claimed in the patents are not FDA-approved."); *Warner-Lambert*, 316 F.3d at 1362 ("Congress clearly intended to limit actions for infringement of method-of-use patents under *§ 271(e)(2)(A)* to . . . patents that claim an approved use of a drug.").

Where a patentee initiates an action for patent infringement based on a patent that does not cover an FDA-approved use of a drug and the defendant seeks only to make, sell, or use the drug for the FDA-approved uses, the correct action is for the district court to dismiss the patentee's Complaint. *Bayer Schering*, 676 F.3d at 1317 (affirming dismissal of complaint); *AstraZeneca*, 669 F.3d at 1372 (same). Zemplar® is not approved for the method of use covered by the '815 patent, and Hikma has not sought FDA approval to market its proposed generic product for this use. Therefore, as a matter of black-letter law, AbbVie cannot state a claim of patent infringement under § 271(e)(2)(A) based on Hikma's 505(b)(2) application.

### B. AbbVie Cannot State A Claim For Induced Infringement Under 35 U.S.C. § 271(b)

AbbVie's allegations of inducement in Counts I and II of the Complaint also fail to state a claim upon which relief may be granted. Under section 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To establish induced infringement, "a patent holder must prove that once the defendants knew of the patent, they actively and knowingly aided and abetted another's direct infringement." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (internal quotations emphasis, and brackets omitted). In other words, "the inducer must persuade another to engage in conduct that

the inducer knows is infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2065 (2011). The "mere knowledge of possible infringement by others does not amount to inducement; *specific intent* and *action to induce* infringement must be proven." *DSU*, 471 F.3d at1305 (emphasis added); *Warner Lambert,* 316 F.3d at 1363. Because a §271(e)(2) claim is based on the filing of an ANDA, the induced infringement analysis under that section "is limited to whether the accused infringer's ANDA seeks approval for activities that would constitute infringement of the asserted patent[]." *AstraZeneca*, 669 F.3d at 1381.

Here, AbbVie's induced infringement allegations (and only allegation of specific intent to infringe) appear to rest on its theory that treatment of secondary hyperparathyroidism *necessarily* treats renal osteodystrophy because administration of paricalcitol suppresses elevated blood levels of PTH. (D.I. 1, ¶¶ 33-39.) AbbVie claims that Hikma's proposed drug label "contains descriptions" that would lead a physician to intend to, and necessarily, treat renal osteodystrophy. (*Id.* at ¶ 35.) AbbVie's argument is fatally flawed, first because even if true, it is legally irrelevant, and second, because it is contrary to the record.

First, whether administration of Hikma's generic paricalcitol product would ultimately have any treatment effect with respect to renal osteodystrophy is immaterial to the infringement inquiry here. In this regard, *Bayer Schering* is directly on point. In *Bayer Schering*, the drug at issue was approved for oral contraception. *Bayer Schering*, 676 F.3d at 1319-20. The patent was directed to simultaneously achieving a contraceptive effect, an anti-androgenic effect and an anti-aldosterone effect in a female patient in need thereof. *Id.* at 1320. Bayer argued that because those effects were recognized in the "Pharmacodynamics" and "Clinical Pharmacology" sections of the label for Yasmin®, physicians prescribing the drug would intend to produce those effects in patients. *Id.* at 1322. The court rejected Bayer's argument, holding

that Yasmin® was not found to be safe and efficacious for producing anti-androgenic and anti-aldosterone effects and that those effects were thus not approved uses.  *Id.* at 1325.  The court held that as a result, there could be no infringement under either § 271(e)(2) or a theory of inducement.  *Id.* at 1326.

Here, much like the plaintiff in *Bayer Schering*, AbbVie alleges that based on the Zemplar® label, physicians and healthcare professionals prescribing paricalcitol "understand and intend that treating secondary hyperparathyroidism by suppressing PTH will treat renal osteodystrophy…" (D.I. 1 ¶ 38.)  However, as with the claimed effects in *Bayer Schering*, treatment of renal osteodystrophy has not been shown to be safe and efficacious. In fact, as noted above, this use was *rejected* by the FDA as unsupported by AbbVie's data.  (Ward Decl., Ex. 6 at 104.)  As a result, AbbVie's argument is foreclosed as a matter of law. *Bayer Schering*, 324 F.3d at 1334; *Warner-Lambert*, 316 F.3d at 1364-65; *Allergan*, 324 F.3d at 1334.

Moreover, AbbVie's allegations contradict the representations made to the patent office by the applicants during prosecution of the '815 patent.  There, the applicants told the patent examiner that the DeLuca reference, which taught the treatment of secondary hyperparathyroidism with 19-nor analogs, such as paricalcitol, says nothing about using those compounds to treat renal osteodystrophy.  (Ward Decl., Ex. 4 at 5.)  In order to bring its claims of infringement here, AbbVie now reverses course and says that treating secondary hyperparathyroidism necessarily treats renal osteodystrophy.  If AbbVie were correct, the '815 patent would never have been allowed.

Finally, the label for Zemplar®, and the corresponding proposed generic label proposed by Hikma, do not support AbbVie's allegations that treatment of secondary hyperparathyroidism and treatment of renal osteodystrophy are one in the same.  All that the

label actually says is that elevated PTH levels "*often* precede abnormalities in serum calcium and phosphorous, affect bone turnover rate and *may* result in renal osteodystrophy." (Ward Decl., Ex. 8 at "Clinical Pharmacology" section.) And, as noted above, the FDA's view is that AbbVie's data does not support this indication. The fact that FDA rejected AbbVie's requested renal osteodystrophy indication, and at the same time permitted the statements about possible effects in the "Clinical Pharmacology" section, indicates that FDA did not consider those statements to be endorsing treatment of renal osteodystrophy.

Accordingly, AbbVie has not and cannot, as a matter of law, assert a claim for induced infringement under 35 U.S.C. § 271(b).

### C.    AbbVie Cannot State A Claim For Contributory Infringement Under 35 U.S.C. § 271(c)

In addition to alleging that Hikma infringes the '815 patent under 35 U.S.C. § 271(e)(2) and will induce infringement under 35 U.S.C. § 271(b), AbbVie also alleges in Counts I and II that Hikma has or will indirectly infringe the '815 patent under 35 U.S.C. § 271(c) by contributing to the infringement of third parties.[5] As with its other alleged bases of infringement, AbbVie cannot state a claim for contributory infringement of the '815 patent under § 271(c).

In order to demonstrate contributory infringement under § 271(c), AbbVie must demonstrate Defendants' proposed generic paricalcitol product has no substantial noninfringing use. 35 U.S.C. § 271(c); *DSU*, 471 F.3d at 1301. The "existence of substantial non-infringing uses for the [accused product] defeats [a] claim for contributory infringement as a matter of law." *Vita-Mix Corporation v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).

_____

[5] AbbVie does not specifically reference § 271(c) in its Complaint, but does allege throughout its Complaint that Defendants will contributorily infringe the '815 patent. (*See, e.g.*, D.I. 1 at ¶¶ 40, 46.)

"[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Id.* at 1327. Put another way, liability for contributory infringement arises only where the article of commerce is "unsuited for any commercial use" other than infringement, *Sony Corp. of America v. Universal City Studios,* 464 U.S. 417, 441 (1984), or is "good for nothing else but infringement." *MGM Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 932 (2005).

Paracalcitol, of course, has a substantial non-infringing use. As explained above, the *only* FDA-approved use of Zemplar®, treatment of secondary hyperparathyroidism associated with chronic kidney disease Stage 5, is *not covered* by the '815 patent. Thus, the FDA-approved use is a substantial (in fact, overwhelming) non-infringing use as a matter of law. And because Hikma requests the same indication for its proposed generic paricalcitol product, it cannot contribute to others' infringement of the '815 patent. 35 U.S.C. § 271(c); *DSU*, 471 F.3d at 1301. For this reason, to the extent AbbVie's Complaint attempts to assert a claim of contributory infringement in Counts I and II, such a claim must be dismissed.

## VI.    CONCLUSION

AbbVie's claims of patent infringement are foreclosed by well-established Federal Circuit law. Given that the methods of the '815 patent are not FDA-approved with respect to Zemplar®, and given that Hikma does not seek approval of its proposed paricalcitol products for the use claimed in the '815 patent, AbbVie had no legitimate cause to sue. By doing so, AbbVie has wasted judicial resources and has created a time-consuming regulatory obstacle to the approval of defendants' generic products, thus unjustifiably prolonging the term of Zemplar®'s market exclusivity. "There is no suggestion whatsoever in the statute or the legislative history that Congress intended that approval of a drug for a particular indication should be denied or

18

even delayed by the existence of a patent that claims some other, unapproved indication of the drug." *Warner-Lambert*, 316 F.3d at 1361.

For all of the foregoing reasons, Hikma respectfully urges the Court to enter judgment in favor of Defendants pursuant to Fed. R. Civ. P. 12(b)(6) and award any other relief the Court deems just and proper under the circumstances.

Respectfully submitted,

SEITZ ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

Jeffrey S. Ward
Wendy M. Ward
MERCHANT & GOULD P.C.
10 East Doty Street, Suite 600
Madison, WI 53703
(608) 280-6750
jward@merchantgould.com
wward@merchantgould.com

*/s/ Benjamin J. Schladweiler*
Collins J. Seitz, Jr. (Bar No. 2237)
Benjamin J. Schladweiler (Bar No. 4601)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
cseitz@seitzross.com
bschladweiler@seitzcross.com

*Counsel for Defendants Hikma*
*Pharmaceutical Co., Ltd., West-Ward*
*Pharmaceuticals Corp., and Exela*
*Pharma Sciences LLC*

Dated: October 25, 2013

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on October 25, 2013, a true copy of the foregoing **Memorandum in Support of Defendants' Motion to Dismiss** was served via electronic mail upon the following counsel of record:

Mary B. Graham
Derek J. Fahnestock
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
mgraham@mnat.com
dfahnestock@mnat.com

Michael A. Morin
David P. Frazier
Robert F. Shaffer
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, D.C. 20001
michael.morin@finnegan.com
david.frazier@finnegan.com
robert.shaffer@finnegan.com


*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (Bar No. 4601)